IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Tamika Ray, | ) | |
| | ) | C/A No. 7:15-cv-5009-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| International Paper Company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Tamika Ray filed this action asserting sexual harassment and retaliation claims under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). (Compl., ECF No. 1). Defendant International Paper Company filed a motion for summary judgment. (ECF No. 32). Plaintiff Tamika Ray filed a response opposing the motion (ECF No. 35), and Defendant filed a reply (ECF No. 40). This matter is before the court on the Magistrate Judge's Report and Recommendation ("Report") recommending that the court grant the Defendant's summary judgment motion. (ECF No. 44). Plaintiff timely filed objections (ECF No. 45), and Defendant filed a reply (ECF No. 47).

## I. Background/Procedural History[1]

Defendant operates a facility in Laurens, South Carolina, which manufactures and distributes packaging boxes.[2] In December 2002, Plaintiff began working as a second shift bundler in the converting department at the Laurens facility. Her supervisor was Johnnie

---

[1]Plaintiff makes numerous objections, some of which are merely a restatement of her arguments in response to Defendant's summary judgment motion. Out of an abundance of caution, the court has engaged in a de novo review of the entire Report. All objections, whether specifically expounded upon in this order or not, received de novo review by the court.

[2]These facts are viewed in a light most favorable to Plaintiff.

McDowell ("McDowell"). In 2007, Plaintiff was promoted to second shift operator and continued to report to McDowell. In 2013, Plaintiff was transferred to a second shift bander operator position in the shipping department where she was directly supervised by Benjamin Owens ("Owens") for part of her shift. However, there was no second-shift supervisor in the shipping department, and after Owens left for the day at 5:00pm, McDowell was the only supervisor.

Plaintiff alleges that her relationship with McDowell started to become uncomfortable in 2003. She alleges that McDowell repeatedly asked her to have sex with him despite her telling him to stop. She alleges that he offered her money and to buy her things in exchange for sex; asked her to come to his house; made obscene gestures; offered to father a baby with her; and asked her to show him her "cha cha" and her "monkey." She alleges that McDowell told her that he wished his office had a curtain so he could bend her over the desk, and she alleges that McDowell grabbed her thigh while she was in his office. Plaintiff testified that whenever McDowell propositioned her, "there were never any witnesses around" and nobody ever overheard McDowell's repeatedly asking Plaintiff to have sex with him.

Plaintiff alleges that she complained numerous times to Owens about the harassment. She alleges that she first complained sometime in 2013 to Owens, Derrick Smith, another supervisor, and Tracy Israel, a safety manager, telling them that McDowell would not leave her alone and was harassing her because she refused to have sex with him. Plaintiff alleges no action was taken and neither Owens, Smith, or Israel reported the harassment. However, Plaintiff also told Owens and Smith she did not want them to say anything because she was afraid it would make things worse. Plaintiff alleges that in the Spring of 2014, after she had complained to Owens, Smith, and Israel, McDowell stopped allowing her to come in early to earn overtime pay which she alleges was a significant portion of her compensation.

On Friday, September 19, 2014, Plaintiff asked a coworker in a text message if he would cover the remaining portion of her shift so that she could spend the night in the hospital with her mother-in-law. The co-worker agreed and Plaintiff left work early. Plaintiff, however, failed to notify a supervisor which is a violation of company policy. Plaintiff spent that night in the hospital with her mother-in-law. While Plaintiff acknowledges she sent the text message to her co-worker, she alleges that she actually needed to leave work early because she had experienced an intense and unbearable week of harassment from McDowell. Plaintiff alleges that the following Monday, September 22, 2014, she reported the harassment to Tammy Hyatt, the Human Resources representative, and Michael Touberen, the complex general manager. Plaintiff was interviewed by Human Resource representatives Ken Reeves and Hyatt. Defendant claims that it investigated Plaintiff's allegations, but did not find any corroboration of Plaintiff's allegations, and McDowell denied the allegations. Despite this, Defendant instructed McDowell not to directly interact with Plaintiff.

After her complaint in 2014, Plaintiff has not had much interaction with McDowell. However, on November 17, 2014, Plaintiff complained to management about McDowell staring or glaring at her. Additionally, Plaintiff complained about McDowell kicking out units when the line was not backed up and then jamming Plaintiff's line by pushing units together. In June 2015, Plaintiff complained to Owens again about McDowell continuing to stare at her. Defendant investigated each of these complaints. Plaintiff also alleges that her overtime hours were eliminated after she reported the harassment in 2013. Plaintiff filed a complaint with the Equal Opportunity Commission ("EEOC"), and after receiving a Notice of Right to Sue, she filed this action.

## II. Applicable Law

Summary judgment is appropriate only "if the movant shows that there is no genuine

dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  In  deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.  A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate."  *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1265 (4th Cir. 1996).

### III. Discussion

#### A. Sexual Harassment and Hostile Environment Claims

To establish a Title VII sexual harassment claim, Plaintiff must show that the offending conduct was (1) unwelcome; (2) based on her sex; (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment; and (4) imputable to her employer. *Ocheltree v. Scollon Productions, Inc.*, 335 F.3d 325, 331 (4th Cir. 2003). The analysis of whether the harassing conduct is imputable to the employer is controlled by *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

Generally, sexual harassment comes in two forms: harassment that does not result in a tangible employment action which has traditionally been referred to as "hostile work environment" harassment, and harassment that does result in a tangible employment action which has traditionally been referred to as "quid pro quo" harassment.  *See generally Ellerth*, 524 U.S. at 760-63.  In *Ellerth* and *Faragher*, however, the Supreme Court eschewed the labels "quid pro

quo" and "hostile work environment" in the context of assessing employer liability in favor of an analysis of whether (1) the employee suffered harassment that culminated in a tangible employment action, or (2) if no tangible employment action existed, the harassment was sufficient to constructively alter an employee's working conditions. *Ellerth*, 524 U.S. at 761-63; *Faragher*, 524 U.S. at 790, 807. "[W]hen the harasser is a supervisor, the employer is presumptively liable under the doctrine of respondeat superior, unless the *Faragher-Ellerth* defense applies." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 n.7 (4th Cir. 2012).

In *Faragher* and *Ellerth*, the Supreme Court recognized that in certain limited circumstances, an employer could invoke an affirmative defense to sexual harassment claims. If the alleged harasser is a supervisor,

> [and] the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided.

*Vance v. Ball State*, ____ U.S. ____ , 133 S.Ct. 2434, 2439 (2013) (citing *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765).[3]

Defendant argues that the *Faragher-Ellerth* defense applies and that Plaintiff's claim for

---

[3]This affirmative defense is inapplicable to a situation where a coworker is the alleged harasser. *See Matvia v. Bald Head Island Mgmt., Inc.*, 259 F .3d 261, 266 (4th Cir. 2001) (stating that "[t]he affirmative defense of *Faragher* and *Ellerth* allows an employer to avoid strict liability for a supervisor's sexual harassment"); *Alford v. Martin & Gass, Inc.*, No. 1:08cv595, 2009 WL 497581, at *6 (E.D.Va. Feb. 25, 2009) (Brinkema, J.) (stating that because an "incident was perpetrated by non-supervisory co-workers," *Faragher-Ellerth* did not apply to that incident). "[A]n employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." *Vance*, 133 S.Ct. at 2454. Plaintiff argued McDowell was Plaintiff's supervisor, and Defendant and the Magistrate Judge assumed this was true for purposes of this summary judgment motion. (See ECF No. 35 at 2; ECF No. 32-1 at 10 n.2; Report at 9 n.6). Accordingly, this court also assumes McDowell was Plaintiff's supervisor.

sexual harassment or hostile work environment should be dismissed because Plaintiff has failed to establish that the alleged harassment culminated in a tangible employment action, and Defendant had in place a policy that would have prevented and/or corrected any harassing behavior, but Plaintiff unreasonably failed to take advantage of that policy.

First, the court must determine whether the harassment culminated in a tangible employment action. A tangible employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance*, 133 S.Ct. at 2442 (*quoting Ellerth*, 524 U.S. at 761). There is no argument or evidence in the record demonstrating that Plaintiff was hired, fired, not promoted, or reassigned to a position with significantly different responsibilities. Therefore, the court looks to whether McDowell made a significant change in Plaintiff's benefits. "A reduction in an employee's hours, which reduces the employee's take-home pay, qualifies as a tangible employment action." *Dulaney*, 673 F.3d at 331 n. 7 (quoting *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1231 (11th Cir. 2006)).

Plaintiff contends that she suffered a tangible employment action because she contends that her overtime hours were eliminated which substantially affected her pay. The Magistrate Judge stated that the overtime pay may constitute a tangible employment action, but in this case, such an allegation was more appropriately considered in regard to Plaintiff's retaliation claim because Plaintiff alleges that her overtime was eliminated after she reported the harassment. (Report at 10-11). In her objections, Plaintiff contends that the Magistrate Judge erred in opining that the elimination of overtime could be used only in regard to her retaliation claim. (Objections at 6). She contends that the Magistrate Judge sua sponte created this reasoning. *Id.*

Plaintiff overlooks that Defendant argued that Plaintiff has not suffered a tangible

employment action related to the alleged sexual harassment. (ECF No. 40 at 6-7). While Defendants did not specifically state that the elimination of overtime pay should only be discussed in relation to retaliation, Defendant argued the broader issue that Plaintiff has not suffered a tangible employment action so as to prove a sexual harassment claim.

The Magistrate Judge did not abuse her discretion or inappropriately raise the issue. While a judge should not advocate from the bench, she has an obligation to raise legal issues that the parties may have overlooked or neglected. "After all, the judge is on the bench in the first place (we trust) because of superior legal background, expertise, or credentials, and for that reason should not sit as a passive observer who functions solely when called upon by the parties." *Gonzalez v. Volvo of America Corp.*, 734 F.2d 1221, 1225 (7th Cir. 1984)(internal citation and quotation marks omitted); *see also United States v. Cheramie*, 520 F.2d 325, 327 (5th Cir.1975) (stating that "a judge is more than a robed mummy presiding at trial" - he should instead be an "active, alert judicial moderator").

In any event, Plaintiff has had an opportunity to address this specific issue in her objections. Plaintiff argues that action taken by an employer can be a tangible employment action for the purposes of both harassment and retaliation claims. The court agrees that a tangible employment action *can* be relevant to both claims. However, here, the evidence establishes that the alleged tangible employment action was taken solely in retaliation for Plaintiff reporting the alleged harassment. *See Ellerth*, 524 U.S. at 753-54 ("When a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII."); *Dulaney*, 673 F.3d at 332 (holding that "there must be some nexus between the harassment and the tangible employment action."); *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 182 (4th Cir. 1998) (noting that if a plaintiff's termination did not

"result from" a refusal to submit to a supervisor's sexual harassment, the employer may assert the *Faragher/Ellerth* affirmative defense). *See also Helm v. Kansas*, No. 08-2459-JAR, 2010 WL 11527151 (D.Kan. Mar. 18, 2010) (holding that "even if Helm was terminated in retaliation for reporting the alleged harassment, there is no basis for the Court to find that her termination was the culmination of the harassment . . ."). Moreover, according to Plaintiff's own testimony and interrogatory responses, the allegedly tangible employment action resulted, not from the harassment itself, but from Plaintiff's act of reporting the harassment. (ECF Nos. 35-2 at 12-13; 35-5 at 6).[4] Thus, Plaintiff's allegations of retaliatory conduct are not sufficient to state a claim that the alleged sexual harassment itself resulted in a tangible employment action. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790-91 (6th Cir. 2000) (holding that conduct alleged to have occurred in retaliation for complaints made about a hostile work environment cannot be figured into "the hostile working environment equation," because such incidents are not alleged to have occurred "because of sex"); *Noviello v. City of Boston*, 398 F.3d 76 (1st Cir. 2005) (holding that even when retaliation is derivative of particular act of harassment, it normally does not stem from the same animus because most often retaliation is distinct and independent act of discrimination, motivated by discrete intention to punish person who has rocked the boat by complaining about unlawful employment practice). Because the adverse employment action was not taken until after Plaintiff reported the alleged harassment and did result from Plaintiff's refusal to acquiesce to McDowell's sexual propositions, the court agrees with the Magistrate Judge that the issue of Plaintiff's overtime being eliminated is properly addressed in regard only as to the retaliation claim.

Next, the court turns to whether Defendant exercised reasonable care to prevent and

---

[4] The court notes that Plaintiff alleges in her Complaint that when she "refused to accede to [McDowell's] demand, [he] retaliated . . . " (Compl. at ¶3). However, there is no evidence or argument in support of this allegation.

correct any harassing behavior. The "dissemination of an effective anti-harassment policy provides compelling proof that an employer has exercised reasonable care to prevent and correct sexual harassment." *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 268 (4th Cir. 2001) (internal quotation marks omitted). Here, it is undisputed that Defendant had an anti-harassment policy in place and distributed it to its employees. The only way to rebut this proof is to show that the "employer adopted or administered an anti-harassment policy in bad faith or that the policy was otherwise defective or dysfunctional." *Brown v. Perry*, 184 F.3d 388, 396 (4th Cir. 1999) (quoting *Faragher*, 524 U.S. at 808).

After Plaintiff complained in September 2014, Defendant immediately began an investigation into Plaintiff's complaints. Defendant interviewed McDowell and all of the individuals named by Plaintiff. McDowell denied the allegations and none of the other individuals had heard or witnessed McDowell sexually harass Plaintiff.[5] Defendant prohibited McDowell from any direct communication with Plaintiff, and in her deposition, Plaintiff acknowledged that the sexual harassment stopped. Plaintiff, however, argues that, after she formally complained, she was harassed by McDowell who stared at her and made her job more difficult by jamming her production line. Plaintiff complained about this behavior and Defendant investigated each complaint.

In her deposition, Plaintiff was specifically asked about her allegations about McDowells' staring at her. She described the staring as "a dazed stare." (ECF No. 35-2 at 89). In her

---

[5]Plaintiff objects to the Magistrate Judge's statement that "Defendant did not consider [McDowell's statements to Plaintiff's co-workers that McDowell wanted to have sex with Plaintiff] corroborating Plaintiff's allegations." Plaintiff contends that this is a disputed issue material to the case. The court disagrees. Plaintiff attempts to conflate McDowell's comments to coworkers that he would like to have sex with Plaintiff into corroboration of the sexual harassment alleged by Plaintiff. Moreover, the court notes that Plaintiff herself in her deposition stated that there were no witnesses when McDowell propositioned her. (ECF No. 32-2 at 21, 2, 23, 24, 28, 30, 39).

declaration, however, Plaintiff contends that McDowell would stare at her "personally" in an "intimidating, hostile" manner for long periods of time. (ECF No. 35-1 ¶ 18). She then states that "[e]arlier on the staring was more like oogling and looking me up and down (up and down my body)." (ECF No. 35-1 ¶ 19). Many courts have disregarded self-serving affidavits that contradict prior sworn statements of the affiant as sham affidavits. *See, e.g ., Shockley v. City of Newport News*, 997 F.2d 18, 23 (4th Cir.1993); *Zimmerman v. Novartis Pharm. Corp.*, 287 F.R.D. 357, 362 (D.Md. 2012). Plaintiff has not presented any evidence, aside from her self-serving allegations, that McDowell's staring at her after her September 2014 complaint was sexual in nature. *See also Angel Med. Ctr., Inc. v. Abernathy*, 1 Fed.Appx. 217, 218 (4th Cir. 2001) (finding plaintiff "presented no evidence of such an accord apart from his own bald and self-serving allegations, which contradict his previous response to an interrogatory and are insufficient to avoid summary judgment") (citing *White v. Boyle*, 538 F.2d 1077, 1080 (4th Cir. 1976)). Additionally, it is unclear what Plaintiff means by "earlier on." Accordingly, the court finds Plaintiff has not established that any sexual harassment occurred after she complained in September 2014.

As for Defendant's investigation into Plaintiff's September 2014 complaint which is set forth above, the court finds it was reasonable. "There is no 'exhaustive list' or 'particular combination' of remedial measures or steps that an employer need employ to insulate itself from liability." *See E.E.O.C. v. Xerxes*, 639 F.3d 658, 669 (4th Cir. 2011) (quoting *EEOC v. Cent. Wholesalers, Inc*., 573 F.3d 167, 178 (4th Cir. 2009)). Instead, "responses that have been held reasonable have often included prompt investigation of the allegations, proactive solicitation of complaints, scheduling changes and transfers, oral and written warnings to refrain from harassing conduct, reprimands, and warnings that future misconduct could result in progressive discipline, including suspension and termination." *Id.* at 670 (quoting *Adler*, 144 F.3d at 676-77). *See*

*Spicer v. Commonwealth of Virginia et al.*, 66 F.3d 705, 710 (4th Cir. 1995) (en banc) (no liability where plaintiff conceded that harassment stopped).[6]

Finally, the court must determine if Plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that Defendant provided. Where the harasser is a supervisor and no tangible employment action has been taken, the victim is compelled by the *Ellerth/Faragher* defense to make an internal complaint, i.e., "to take advantage of any preventive or corrective opportunities provided by the employer." *See Faragher*, 524 U.S. at 807. "[A]n employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists." *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 268 (4th Cir. 2001) (internal quotation marks omitted). The reporting obligation is essential to accomplishing Title VII's "primary objective," which is "not to provide redress but to avoid harm." *See Faragher*, 524 U.S. at 806. "Little can be done to correct th[e] objectionable behavior unless the victim first blows the whistle on it. An employee's subjective fears of confrontation, unpleasantness or retaliation thus do not alleviate the employee's duty . . . to alert the employer to the allegedly hostile environment." *Id.* (alteration and internal quotation marks omitted). *See also Matvia*, 259 F.3d at 270 (holding that the employer had established the affirmative defense because, "[i]n light of th[e] long-term and persistent harassment, [the plaintiff] cannot be excused from failing to report [her supervisor's conduct]" sooner (emphasis added)).

Here, Plaintiff contends that after ten years of harassment, she first reported the

_____

[6]Moreover, even considering Plaintiff's self-serving declaration, "[t]he fact that Plaintiff disputes that the harassment ended or that there may have been a few additional incidents of alleged sexual harassment, [ ], does not create a genuine issue of material fact as to the reasonableness of [the employer's] investigation. *Lorenz v. Fed'l Exp. Corp.*, No. 7:10-cv-00487, 2012 WL 4459570, at *8 (W.D. Va. Aug. 17, 2012) (citing *Xerxes Corp.*, 639 F.3d at 675 (holding that employers "cannot be held to a standard under which they are liable for any and all inappropriate conduct of their employees") (quoting *Spicer*, 66 F.3d at 711)).

harassment in 2013 to Owens, Smith, and Israel. However, she also states in her responses to Defendant's interrogatories, that she asked them not to act on her complaint. (ECF No. 32-2 at 57).[7]

> Under these circumstances, as in *Brown*, when an employer decides to respect the employee's wishes and not pursue a complaint, despite the fact that this does not comport with company policy, such action may still be considered reasonable. *See id.* This Court recognizes that "[s]ometimes, as in this case, an employer's reasonable attempt to prevent future harm will be frustrated by events that are unforeseeable and beyond the employer's control," *id.*, such as the victim's decision not to report or pursue a claim.

*Silver v. Gen. Motors Corp.*, 225 F.3d 655, *4 (4th Cir. 2000)(unpublished).

While Plaintiff contends that she feared retribution if she complained, the Fourth Circuit has recognized that fears of retaliation or ostracism do not excuse a failure to comply with the reporting procedures in an employer's policy. *See Barrett*, 240 F.3d at 267 ("[T]he law is specifically designed to encourage harassed employees to turn in their harasser because doing so inures to everyone's benefit."). *See also Matvia*, 259 F.3d at 270 (noting a report of harassment might result in a "negative reaction from coworkers," or in retaliation, but stressing that "[t]he reporting requirement is so essential to the law of sexual harassment that we 'have refused to recognize a nebulous fear of retaliation as a basis for remaining silent.' ") (quoting *Barrett*, 240 F.3d at 267)). Thus, "[a] generalized fear of retaliation does not excuse a failure to report sexual harassment." *Barrett*, 240 F3d at 267.

Plaintiff was aware of Defendant's policy, but chose not to use it when the harassment began in 2003. *Bullock v. Rehrig Intern., Inc.*, No. 3:05CV697, 2006 WL 1303124 (E.D. Va. May 10, 2006). Because Plaintiff failed to follow Defendant's complaint procedure, Defendant is

---

[7]Additionally, the court notes that in her deposition Plaintiff testified that on September 19, 2014, she told Defendant she needed to leave work because of her mother-in-law, but she testified that it was really because "that was hell week for [her]. It had never been that bad before. [And] [a]t that point, [she] still hadn't told anybody . . . ." (ECF No 35-2 at 73).

not liable. Moreover, once Plaintiff made a formal complaint in September 2014, Defendant took prompt, reasonable, and effective action. *See Brown v. Perry*, 184 F.3d at 397 (granting summary judgment where employer's response was prompt, reasonable and effective, and stating that "[t]he law requires reasonableness, not perfection").

## B. Retaliation

Title VII proscribes discrimination against an employee because he "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). Employees engage in protected oppositional activity when, inter alia, they "complain to their superiors about suspected violations of Title VII." *Bryant v. Aiken Reg'l Med. Ctrs. Inc*., 333 F.3d 536, 543-44 (4th Cir. 2003). To establish a prima facie case of retaliation under Title VII, a plaintiff must prove that (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) there was a causal connection between the protected activity and the adverse action. activity. *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015). If the plaintiff establishes a prima facie case, the burden then shifts to the employer to establish a legitimate, non-retaliatory reason for the adverse action. If the employer sets forth a legitimate, non-retaliatory reason for the action, the plaintiff then bears the burden of showing the employer's proffered reasons are pretextual or her claim will fail. *See Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). In order to establish pretext, a Title VII retaliation plaintiff must prove that his or her protected activity was a but-for cause of the adverse employment action by the employer. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2532-34 (2013); *Foster*, 787 F.3d at 252. In other words, the plaintiff must show that the complained of injury would not have occurred "but for" the alleged retaliatory motive. *Id.*

Defendant does not dispute that Plaintiff's complaint in September 2014 about McDowell's harassment is a protected activity. However, Defendant argues Plaintiff cannot

satisfy the prima facie case because she cannot establish an adverse employment action and cannot show a causal relationship between her complaint and the elimination of overtime opportunities. The Magistrate Judge recommended granting summary judgment on Plaintiff's claim for retaliation finding that Plaintiff could not establish a causation element between the protected activity and the alleged adverse employment action. In her objections, Plaintiff alleges that she experienced retaliation - a reduction in overtime after the earlier complaint she contends she made to Owens, Smith, and Israel in 2013. In reviewing the record and viewing the evidence in the light most favorable to the Plaintiff, the court finds that Plaintiff cannot establish that she suffered an adverse employment action nor a casual connection between her complaint and the alleged adverse employment action.

First, in regard to an adverse employment action, the court has reviewed the entire record. In her response to Defendant's interrogatories, Plaintiff stated that her overtime opportunities ended in early 2014. (ECF No. 32-2 at 58). In her deposition, Plaintiff testified that after she reported the harassment, she did not suffer any consequences (ECF No. 32-2 at 50), and did not lose any money or have a decrease in earnings (ECF No. 32-2 at 51). And in fact, she agreed that in 2015, her overtime compensation actually increased from 2014, and she actually earned more in overtime after she complained in September 2014. (ECF No. 32-2 at 52). In her deposition, Plaintiff was specifically asked by her attorney whether she lost her overtime after she had complained to Owens, Smith, and Israel. She responded that those events happened in the same year, but that she could not "give specific dates if it happened before or after." (ECF No. 35-2 at 90).

Subsequently, in a declaration dated March 7, 2017, Plaintiff states that the statements made in her interrogatory responses are true and correct. (ECF No. 35-1 ¶ 16).[8] Further, she avers

---

[8]Defendant filed its summary judgment motion on February 24, 2017.

in this declaration that in her deposition when she stated there was no consequences to her reporting McDowell, she was referring to her September 2014 complaint. (ECF No. 35-1 ¶ 25). Despite testifying that she earned more for overtime in 2015 (ECF No. 32-2 at 52), in her declaration, she states that she is still not allowed to come in early. (ECF No. 35-1 ¶21).

As stated above, many courts disregard self-serving affidavits that contradict prior sworn statements of the affiant as sham affidavits. *See, e.g.*, *Shockley,* 997 F.2d at 23; *Zimmerman*, 287 F.R.D. at 362. *See also Angel Med. Ctr., Inc.*, 1 Fed.Appx. at 218 (finding plaintiff "presented no evidence of such an accord apart from his own bald and self-serving allegations, which contradict his previous response to an interrogatory and are insufficient to avoid summary judgment") (citing *White v. Boyle*, 538 F.2d 1077, 1080 (4th Cir. 1976)). Plaintiff has not presented any evidence, aside from her bare conclusory allegations in her declaration, that the elimination of her overtime occurred after her informal complaint. *See Nat'l Enterprises, Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000); *see also Chafin v. State Farm Fire & Cas. Ins. Co.*, No. Civ. A. 2:03-0153, 2003 WL 23571723, at *2 (S.D.W.Va. Nov. 20, 2003) ("Self-Serving statements are not enough to defeat a motion for summary judgment."), aff'd, 98 F. App'x 250 (4th Cir. 2004).

While denial of overtime may be sufficient in some cases to constitute an adverse employment action, Plaintiff's evidence is simply not sufficient here. *See Hansen v. Perry Tech.*, 206 F.Supp.2d 1223, 1235 (S.D.Fla. 2002) (holding that plaintiff's allegation that he was denied overtime did not constitute tangible employment action because it was not supported by payroll records); *Gay v. Aramark Uniform & Career Apparel, Inc.*, No. H-07-1161, 2007 WL 4190781, at * 7 (S.D.Tex. Nov. 21 2007) (holding that plaintiff's mere allegations of being denied overtime privileges were insufficient to create question of fact as to existence of tangible employment action); *Nat'l Enters., Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000) (discounting non-moving party's affidavit making vague statements about contract terms when same party could not

produce contract itself). Therefore, Plaintiff has not created a genuine dispute of fact on the issue of whether Defendant's actions culminated in an adverse employment action. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249 (holding that to withstand a motion for summary judgment, the non-moving party must proffer sufficient evidence on which a reasonable jury could find in its favor).[9]

Additionally, even assuming Plaintiff could establish an adverse employment action in regard to her the elimination of her overtime, she must also establish that a causal connection exists between the protected activity and the adverse employment action. A plaintiff asserting a retaliation claim must be able to show that her employer took the adverse action "'because the plaintiff engaged in a protected activity.'" *Dowe v. Total Action Against Poverty in Roanoake Valley*, 145 F.3d 653, 657 (4th Cir. 1998). When a plaintiff alleges retaliation for protected activity but fails to state any facts other than temporal proximity that would support an inference of causality, the temporal proximity must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001). Neither the Fourth Circuit Court of Appeals nor the Supreme Court have adopted a bright temporal line. However, the Fourth Circuit has held that a three or four-month lapse between the protected activities and an adverse employment action was "too long to establish a causal connection by temporal proximity alone." *Pascual v. Lowe's Home Ctrs., Inc.*, 193 Fed. App'x 229, 233 (4th Cir. 2006) (unpublished). Here, Plaintiff has failed to identify the dates on which she allegedly complained to Owens leaving the court unable to infer

---

[9]In her objections, Plaintiff contends that McDowell singled her out and picked on her after she complained in September 2014, and this would satisfy any temporal proximity issues. However, this alleged conduct would not be an adverse employment action. An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment and focuses "on whether there has been discrimination in such ultimate decisions as hiring, granting leave, discharging, promoting, and compensation." *Boone v. Goldin*, 178 F.3d 253, 255-56 (4th Cir. 1999). *See also Ellerth*, 524 U.S. at 761. An "[a]ction that merely causes an employee irritation or inconvenience, but does not affect a term, condition, or benefit of her employment, is not an adverse employment action." *Spriggs v. Public Serv. Comm'n. of Md.*, 197 F.Supp.2d 388, 393 (D.Md. 2002)

16

causation based on any temporal proximity between the alleged protected activity and an adverse employment action. Accordingly, Plaintiff cannot establish a prima facie claim of retaliation.

### III. Conclusion

Accordingly, based on the foregoing, the court adopts the Report (ECF No. 44) and Defendant's Motion for Summary Judgment (ECF No. 32) is **GRANTED**.

**IT IS SO ORDERED.**

<u>s/Timothy M. Cain</u>
United States District Judge

September 28, 2017
Anderson, South Carolina