IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

Tamika Ray, )
 )
 Plaintiff, )   C/A No. 7:15-5009-TMC
 )
v. )   **ORDER**
 )
International Paper Company, )
 )
 Defendant. )

Plaintiff Tamika Ray ("Ray") brought this action asserting sexual harassment and retaliation claims under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). (ECF No. 1). Defendant International Paper Company ("International Paper") filed a motion for summary judgment (ECF No. 32), which the court granted (ECF No. 48). On appeal, the Fourth Circuit Court of Appeals reversed the grant of summary judgment and remanded this action. (ECF No. 54). *Ray v. Int'l Paper Co.*, 909 F.3d 661 (4th Cir. 2018). The Fourth Circuit found that questions of material fact existed with respect to whether the reduction in Ray's voluntary overtime hours was an adverse action. The court declined to address whether International Paper had a legitimate, nondiscriminatory reason for the adverse action and whether Ray could prove any such reason was pretextual because the district court had not reached those issues. *Id.* at 671 n.5. Based on this footnote, the undersigned recommitted this action to the magistrate judge for her to address "whether [International Paper] had a legitimate, nondiscriminatory reason for the adverse action and whether [Plaintiff] could prove that any reason offered by International Paper was merely pretextual." (ECF No. 54 at 17 n.5). The magistrate thereafter filed a Report and Recommendation ("Report"), in which she recommends that the court find that disputed issues of material facts exist. (ECF No. 68). Both parties filed objections (ECF Nos. 70, 71), and Ray filed a reply (ECF No. 73). Accordingly, this matter is ripe for review.

## I. Applicable Law

The magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). The failure to file specific objections to the Report not only waives the parties' appellate rights in this matter, but also relieves the district court of any obligation to conduct a de novo review of the issues presented. *See Wells v. Shriners Hosp.*, 109 F.3d 198, 199-200 (4th Cir.1997); *Thomas v. Arn*, 474 U.S. 140,148-153 (1985). The Supreme Court has noted that objections filed in the district court help narrow the issues that the district judge is to consider and issues on appeal. *Thomas*, 474 U.S. at 147. "Congress would not have wanted district judges to devote time to reviewing magistrate's reports except to the extent that such review is requested by the parties or otherwise necessitated by Article III of the Constitution." *Id.* at 153.

## II. Discussion

Title VII prohibits employers from retaliating against an employee for reporting discrimination or harassment. Under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to establish a prima facie case of retaliation under Title VII, a plaintiff must prove that (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) there was a causal connection between the protected activity and the adverse action. *See Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015). If the plaintiff establishes a prima facie case, the burden then

shifts to the employer to establish a legitimate, non-retaliatory reason for the adverse action. *See Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). If the employer sets forth a legitimate, non-retaliatory reason for the action, the plaintiff then bears the burden of showing the employer's proffered reason is pretextual or her claim will fail. *Id.*

In the court's prior order granting summary judgment to International Paper, the undersigned addressed two adverse actions that Ray alleged were taken in retaliation for her reporting the harassment: 1) a reduction in her overtime; and 2) the staring and jamming of Ray's production line by her alleged harasser and supervisor, Johnnie McDowell. (ECF No. 48 at 14, 16 n.9). The court determined that International Paper was entitled to summary judgment because neither of these were adverse actions. *Id.* at 15-16. Ray appealed raising both adverse actions as separate appellate issues in her brief and at oral argument. (ECF No. 58-1 at 15). In its decision, the Fourth Circuit reversed the grant of summary judgment finding that the reduction in overtime was an adverse action. *Ray*, 909 F.3d at 671. Despite it being raised as an issue on appeal, the Fourth Circuit did not address the other alleged retaliatory adverse action - the staring and jamming of Ray's production line.

In response to the court's order recommitting this matter to the magistrate judge, International Paper took the position that the undersigned's prior ruling that the staring and jamming of Ray's lines was not an adverse action was the law of the case. (ECF No. 58 at 13). International Paper noted that Ray had briefed both alleged adverse actions in its appeal but that the Fourth Circuit had only reversed on the reduction in overtime. *Id.* Moreover International Paper contends the undersigned's prior order in regard to this issue was correct because that alleged retaliation did not produce an injury or harm. *Id.* at 14 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Out of an abundance of caution, however,

International Paper addressed whether it could articulate a legitimate, non-discriminatory reason for the both alleged retaliatory adverse actions and whether Ray could establish pretext. (ECF No. 58 at 16-18).

In her response to the courts' order recommitting this matter to the magistrate judge, Ray argues that both alleged adverse actions should be viewed together in addressing whether International Paper had a legitimate, nondiscriminatory reason for the adverse actions. (ECF No. 59 at 8). Ray contends that the undersigned's prior ruling as to the staring and jamming of the production lines was based on bad law, *Boone v. Goldin*, 178 F.3d 253 (4th Cir. 1999). Ray argues that the law-of-the-case doctrine is inapplicable here because *Boone* is no longer good law, and, thus, the undersigned should not continue to apply *Boone*. *Id.* at 17 (citing *Epstein v. World Acceptance Corp.*, 203 F. Supp. 3d 655, 664 (D.S.C. 2016) (holding that the law of the case doctrine should be disregarded where it is clear that the cases law relied upon is no longer good law and the prior decision is erroneous). Further, Ray contends that International Paper's argument that such harassment cannot constitute an adverse employment action because it did not cause Ray any harm or injury "has never been the standard, and it is patently inconsistent with *Burlington Northern*." (ECF No. 59 at 18). Ray also argues that International Paper improperly addresses the sexual harassment claim, which she contends is not an issue here. *Id.* at 15.

In its reply to Ray's response, International Paper argues that, even though Ray raised both adverse actions as separate issues on appeal, the Fourth Circuit addressed only the reduction in overtime and did not reverse on the alleged adverse action of starring and jamming the line. (ECF No. 62 at 1-2). International Paper, therefore, argues that the law of the case is that Ray failed to establish a claim of retaliation based on the jamming and staring. *Id.* at 2.

Additionally, International Paper points out that the Fourth Circuit also cited *Boone* in its opinion for the proposition that "an actionable adverse employment action is one in which an employee suffers a 'discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion'" *Ray,* 909 F.3d at 670 (quoting *Boone*, 178 F.3d at 255). (ECF No. 62 at 2).

In her Report, the magistrate judge noted that the order recommitting the matter to her only addressed the reduction of overtime as an adverse action. (ECF No. 68 at 2 n.1). She then stated that neither the Fourth Circuit nor the undersigned had addressed the other alleged adverse actions - the staring and the jamming of the lines. *Id.* The court respectfully disagrees. In the prior order granting summary judgment to International Paper, the court stated the following:

> In her objections, Plaintiff contends that McDowell singled her out and picked on her after she complained in September 2014, and this would satisfy any temporal proximity issues. However, this alleged conduct would not be an adverse employment action. An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment and focuses "on whether there has been discrimination in such ultimate decisions as hiring, granting leave, discharging, promoting, and compensation." *Boone v. Goldin*, 178 F.3d 253, 255-56 (4th Cir. 1999). *See also Ellerth*, 524 U.S. at 761. An "[a]ction that merely causes an employee irritation or inconvenience, but does not affect a term, condition, or benefit of her employment, is not an adverse employment action." *Spriggs v. Public Serv. Comm'n. of Md.*, 197 F. Supp. 2d 388, 393 (D. Md. 2002).

(ECF No. 48 at 16 n.9). The court ruled that McDowell's alleged picking on Ray, which included the staring and line-jamming, was not an adverse action. Moreover, Ray clearly agrees that the court ruled on this issue because she argued on appeal that the undersigned erred in holding that the staring and jamming of the line were not adverse actions. (ECF No. 58-1 at 50).

In its simplest form, the law-of-the-case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Cold Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988).

In applying the law-of-the-case doctrine, the Fourth Circuit has held that a court generally may not depart from its previous ruling unless "'(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.'" *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988) (quoting *EEOC v. Int'l Longshoremen's Assoc.*, 623 F.2d 1054 (5th Cir. 1980)).

The mandate rule is a specific application of the law-of-the-case doctrine that provides that "findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal." *In re DNA Ex Post Facto Issues*, 466 Fed. App'x 235, 238 (4th Cir. 2012) (citation omitted). The mandate rule provides that after a case is "decided on appeal and a mandate issued, the lower court may not deviate from that mandate but is required to give full effect to its execution." *United States v. Lentz*, 384 F. Supp. 2d 934, 939 (E.D. Va. 2005). The Fourth Circuit has held in a criminal matter that upon "remand[ing] solely on the issue of the district court's departure below the sentencing guidelines, we impliedly upheld [the defendant's] conviction," such that the defendant was prohibited from litigating his conviction on appeal. *United States v. Lathrop*, 187 F.3d 632, at *1 (4th Cir. Aug. 10, 1999) (unpublished).

The court need not decide whether the mandate rule or the law-of-the-case doctrine precludes revisiting the prior decision that the staring and jamming of production lines were not adverse actions. First, because Ray has not moved for such relief. "A court must exercise caution before granting a party relief she did not seek." *Lawson v. Union Cty. Clerk of Court*, 828 F.3d 239, 253 (4th Cir. 2016). The court declines to do so here. Second, because the court's ruling would remain the same.

6

In a retaliation claim, the standard for an adverse employment action is more lenient than for a substantive discrimination claim. *Burlington*, 548 U.S. at 64. The Fourth Circuit has specifically found that "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion" clearly constitute adverse actions. *Boone*, 178 F.3d at 255. However, in *Burlington*, the Court held that "the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington*, 548 U.S. at 64. In the retaliation context, a plaintiff must show that the challenged action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (quotation marks and citations omitted). However, the Court also held that the "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id.* at 67. While factors other than terms and conditions of employments may be looked at to determine whether there has been an adverse action, the alleged adverse action still must be material. *Csicsmann v. Sallada*, 211 Fed. App'x 163, 168 (4th Cir. 2006). "As [*Burlington*] explains, trivial harm is not enough to constitute an adverse action; rather the harm must be material." *Id.* Accordingly, "a plaintiff must show the retaliation produced an 'injury or harm.'" *Jones v. Eaton Corp.*, No. 3:15-4236-JMC-KDW, 2017 WL 2332638, at *12 (Feb. 9, 2017) (citing *Burlington*, 548 U.S. at 64, 67 (noting the anti-retaliation provision of Title VII "protects an individual not from all retaliation, but from retaliation that produces an injury or harm.")). Ray's allegations that McDowell stared at her and jammed her production line, without more, are not material adverse employment actions. *See Whitaker v. Nash-Rocky Mount Bd. of Educ.*, No. 5:12-cv-623-BO, 2013 WL 5592881, at *3 (E.D. N.C. Oct. 10, 2013). Accordingly, even if this issue were

7

properly before the court, which it is not, the court would still rule that the staring and jamming of the production lines were not adverse actions.

Turning to the Report, the magistrate judge determined that International Paper had satisfied its burden to articulate a legitimate, nondiscriminatory reason for not reducing Ray's overtime hours. The magistrate judge noted that when one of the bander operators is out, the bander operators from the other shifts have to split the shift to cover it, and Ray, who often came in early to work four hours of overtime voluntarily, refused to work another four hours of mandatory overtime after her shift for a total of sixteen hours straight. (ECF No. 68 at 6). International Paper argues that, because Ray was unwilling to work voluntary and mandatory overtime on the same day, it stopped allowing Ray to work voluntary overtime before her shift. (ECF No. 58 at 19-20). International Paper relies on the deposition testimony of International Paper's 30(b)(6) witness, Kenneth Reeves. *Id.* This witness testified that several employees discussed Ray's refusal to work overtime after she had completed her shift because she had worked overtime before her shift. (ECF No. 40-2 at 13-15).

Ray objects, inter alia, to relying on this testimony and contends the 30(b)(6) witness' testimony is inadmissible. (ECF No. 59 at 6). The magistrate judge declined "to address [Ray's] argument that [International Paper] failed to support its proffered reason with admissible evidence because even accepting [International Paper's] proffered reason, as discussed, a question of fact exists with respect to whether the proffered reason is a pretext for retaliation." *Id.* at 6 n.3. Ray objects to this part of the Report and argues that International Paper has failed to offer any admissible evidence to support its proffered legitimate, nondiscriminatory reason. (ECF No. 71 at 1).

When ruling on a summary judgment motion, the court often assumes, without deciding, some issue and addresses another as the reason for denying summary judgment. The court notes that although Ray has not moved for summary judgment, it appears she wants the court to grant her summary judgment on this issue. This the court declines to do. The court finds that the magistrate judge did not err in assuming, without deciding, that International Paper had set forth a legitimate, nondiscriminatory reason for reducing Ray's overtime and finding that a genuine issue of fact exists as to whether the proffered reason is a pretext for retaliation, which precludes the grant of International Paper's summary judgment motion.[1] Accordingly, the court overrules Ray's objections.

Based on the foregoing, the court adopts the Report (ECF No. 68) and **DENIES** Defendant summary judgment.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

October 15, 2019
Anderson, South Carolina

---

[1] In any event, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, facts in support of or in opposition to a motion for summary judgment do not need to be in admissible form. Rather, the party must identify facts that *could* be put in admissible form. *Rivers v. Burnette*, No. 4:13-cv-01914, 2015 WL 535623, at *8 n.2 (D.S.C. Feb. 10, 2015) (citation omitted); *see also Wake v. Nat'l R.R. Passenger Corp.*, 2013 WL 5423978, at *1 (D. Md. Sept. 26, 2013)). Here, the facts which International Paper alleges support it motion for summary judgment could be put into admissible form.